

# IN THE
# TENTH COURT OF APPEALS

No. 10-11-00063-CR

**BRIAN KEITH LOUD,**

                                                                    **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                    **Appellee**


**From the 361st District Court**
**Brazos County, Texas**
**Trial Court No. 10-02171-CRF-361**


## MEMORANDUM  OPINION


The jury convicted Brian Loud of the offense of robbery, found the enhancement paragraphs to be true, and assessed his punishment at confinement for life.  We affirm.

### Background Facts

There is no challenge to the sufficiency of the evidence.  Cassie Bailey, a bank teller at Wells Fargo Bank, testified at trial that on the morning of February 2, 2010 a man came into the bank and handed her a note that said:

> I have a gun, I don't want to hurt you, keep your hands where I can see them put the money in here. Anything goes wrong before I'm out the door. I'll kill you!

Bailey gave the man all of the money out of her drawer, and the man left the bank. Bailey identified Loud at trial as the person who robbed the bank.

Detective Lance Matthews testified that he received information naming Loud as a possible suspect in the robbery and giving an address where Loud could be located. Detective Matthews went to the residence, and Loud's brother answered the door. Detective Matthews stated that upon entering the residence, he saw Loud down on his knees with his hands in the air. Loud voluntarily talked to Detective Matthews and denied being involved in the robbery. Detective Matthews received consent to search the residence. He found a black hoodie, black knit cap, and black pants matching those worn by the suspect as seen on surveillance video from the bank.

Detective Matthews obtained an arrest warrant, and Loud was placed under arrest. In an interview the following day, Loud admitted robbing the bank, but indicated that he did so at the request of another individual. Loud told the detective that they planned to use the money to buy drugs and then sell the drugs to "double" or "triple" the amount of money.

### Competency to Stand Trial

In his first issue, Loud complains that the trial court erred in not conducting a sua sponte informal inquiry into his competency. A person is incompetent to stand trial if the person does not have sufficient present ability to consult with counsel with a reasonable degree of rational understanding; or a rational as well as factual

understanding of the proceedings against him. TEX. CODE CRIM. PRO. ANN. art. 46B.003 (West 2006). Either party may suggest by motion, or the trial court may suggest on its own motion, that the defendant may be incompetent to stand trial. TEX. CODE CRIM. PRO. ANN. art. 46B.004 (a) (West Supp. 2011).[1] If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial. TEX. CODE CRIM. PRO. ANN. art. 46B.004 (b) (West Supp. 2011). On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial. TEX. CODE CRIM. PRO. ANN. art. 46B.004 (c) (West Supp. 2011).

An inquiry into competency must be conducted when there is evidence sufficient to raise a bona fide doubt in the mind of the judge whether the defendant is legally competent. *Gonzales v. State*, 313 S.W.3d 840, 842 (Tex. Crim. App. 2010). A bona fide doubt may exist if the defendant exhibits truly bizarre behavior or has a recent history of severe mental illness or at least moderate mental retardation. *Id*. We review a trial court's failure to conduct a competency inquiry under an abuse of discretion standard. *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999).

Loud first argues that his behavior when the police arrived at his brother's residence to investigate the offense is evidence of bizarre behavior. Loud was on his

---

[1] TEX. CODE CRIM. PRO. ANN. art. 46B.004 was amended effective September 1, 2011. The changes apply only to proceedings conducted after September 1, 2011. Because Loud was tried in February 2011, the new provisions are not applicable in this case.

knees with his hands in the air. We do not find Loud's apparent submission to police authority to be an exhibition of truly bizarre behavior.

Loud next argues that his confession indicates that he is easily influenced by others and demonstrates incompetence. We do not find that the circumstances of Loud's confession are sufficient to raise a bona fide doubt as to his competency.

Loud further argues that the evidence of his mental health issues is sufficient evidence for the trial court to conduct a sua sponte inquiry into his competence. Loud presented evidence that he was housed in the medical section of the Brazos County Jail and that he was taking medicine for mental health issues. Evidence that Loud was on psychiatric medication and had a history of mental problems did not mandate a competency inquiry absent evidence of a present inability to communicate or understand the proceedings. *Moore v. State*, 999 S.W.2d at 395-96; *LaHood v. State*, 171 S.W.3d 613, 619 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

The record does not support a finding that Loud was unable to communicate or understand the proceedings. The record shows that Loud and his counsel discussed whether Loud should testify at trial and that Loud decided against testifying. The record further shows that Loud and his counsel discussed trial strategy on a possible defense. Loud responded appropriately when questioned by counsel. The trial court did not abuse its discretion in failing to conduct a sua sponte informal inquiry into Loud's competency. We overrule the first issue.

## *Batson* Challenge

In his second issue, Loud argues that the State used its peremptory challenges to eliminate all African-Americans from the jury and did not give a racially neutral explanation for the challenges pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In *Batson*, the United States Supreme Court held that, while a prosecutor ordinarily may exercise peremptory strikes for any reason related to his views concerning the outcome of the trial, "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race." *Grant v. State*, 325 S.W.3d 655, 657 (Tex. Crim. App. 2010). A *Batson* challenge to a peremptory strike consists of three steps: 1) the opponent of the strike must establish a prima facie showing of racial discrimination; 2) the proponent of the strike must articulate a race-neutral explanation; and 3) the trial court must decide whether the opponent has proven purposeful racial discrimination. *Id*.

The trial court's ruling in the third step must be sustained on appeal unless it is clearly erroneous. *Id*. Because the trial court's ruling requires an evaluation of the credibility and demeanor of prosecutors and venire members, and because this evaluation lies within the trial court's province, we defer to the trial court in the absence of exceptional circumstances. *Id*.

After the parties submitted their peremptory strikes, Loud informed the trial court that the State used peremptory strikes to remove the two African-American venire members within the strike zone. The trial court asked for an explanation. The State responded that it struck Juror 23 because she is a secretary for the Texas Department of

Criminal Justice and that it struck Juror 33 because he was formerly a parole officer for a member of Loud's family.

Loud's counsel disputed the State's explanation as to Juror 23.[2] Loud's counsel stated that in his experience it is defense attorneys who do not want TDCJ employees on the jury. The State explained that people affiliated with TDCJ sometimes have a close relationship with inmates and that can affect their decision on punishment. The State further explained that it often strikes employees of TDCJ. The trial court found the State's explanations for Jurors 23 and 33 to be race neutral.

Loud did not dispute the State's explanation for striking Juror 33. Loud disagreed with the State's explanation for striking Juror 23, but did not further cross-examine the prosecutor on his motives. The record shows that Loud was in custody at the Brazos County Jail prior to trial. Employees of the Brazos County Jail testified on Loud's behalf during the punishment phase of the trial. The trial court's finding that the State offered race neutral explanations for the strikes was not clearly erroneous. We overrule the second issue.

### Conclusion

We affirm the trial court's judgment.


AL SCOGGINS
Justice


---

[2] Loud's counsel initially referred to Juror 33 as being employed by TDCJ; however, the record shows that Juror 23 was the TDCJ employee.

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed February 8, 2012
Do not publish
[CRPM]