In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00008-CR


______________________________




EDWIN FRANKLIN WILLIAMS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 173rd Judicial District Court


Henderson County, Texas


Trial Court No. C-14,513




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Carter



O P I N I O N



 Charged with aggravated assault with a deadly weapon, Edwin Franklin Williams waived his
right to a jury trial and pleaded guilty to the lesser-included offense of deadly conduct. (1) See Tex.
Penal Code Ann. § 22.02 (Vernon Supp. 2008) (aggravated assault), § 22.05 (Vernon 2003)
(deadly conduct); Robertson v. State, 245 S.W.3d 545, 546 (Tex. App.--Tyler 2007, pet. ref'd)
(deadly conduct is lesser included offense of aggravated assault). The trial court assessed Williams'
punishment at eight years' imprisonment. On appeal, Williams challenges the trial court's judgment
by raising two issues. We overrule both contentions of error and affirm the trial court's judgment.

I. Involuntary Guilty Plea

 In one appellate issue, Williams contends the trial court erred by accepting his guilty plea
because that plea was involuntary. Our law requires guilty pleas to be freely and voluntarily given
by a defendant who is competent to stand trial. Tex. Code Crim. Proc. Ann. art. 26.13 (Vernon
Supp. 2008).

 During the plea colloquy, the following exchange occurred:

 THE COURT: On the record in Cause No. 14,513 and 14,514, the State of
Texas and Defendant and Defense counsel has notified the Court that they wish to
resolve this with a plea agreement.


 The plea -- with that agreement, the State is agreeing to abandon the
enhancement paragraphs alleged in the indictment in Cause No. 14,513.

 

 [The State:] And there's two paragraphs in there.


 THE COURT: As well as, in the same Cause No. the State intends to
abandon paragraph B, as alleged in the indictment, and go forward only on
paragraph A. As I understand it, paragraph A is a third-degree felony?


 [The State:] It's a second-degree felony. We've agreed to reduce it. We
checked the box on the plea papers, reduced to deadly conduct, third-degree felony.


 [Defense Counsel:] I've got the plea papers, Your Honor. The other thing is,
it's only under one Cause No. The other will be taken into consideration.


 THE COURT: Cause No. 14,514 will be taken into consideration?


 [Defense Counsel:] Correct.


 THE COURT: Very Well.


 [To the defendant:] Sir, if you will come forward. You were sworn earlier,
you understand that you're still under oath, do you not?


 Mr. Williams: Yes, sir.


 THE COURT: You're Edwin Franklin Williams?


 Mr. Williams: Yes, sir.


 THE COURT: My understanding is that after consultation with your attorney
and after receiving a new plea offer, that you have agreed to plead guilty to the lesser
offense of deadly conduct, which is a third-degree felony. It carries a range of
punishment from two years incarceration in the Texas Department Correction to ten
years, and up to a $10,000 fine. Do you understand the range of punishment?


 Mr. Williams: Yes, sir.


 THE COURT: And did I state that correctly, that you're willing to plead
guilty to that third-degree offense of deadly conduct?


 Mr. Williams: Yes, sir.


 THE COURT: And my understanding is that you wish to go to the Court, me,
for punishment; is that correct?


 Mr. Williams: Yes, sir.


 THE COURT: And you waive the jury consideration of punishment?


 Mr. Williams: Yes, sir.


 THE COURT: All right. Before I talk to you about -- let me show you the
agreed plea recommendation sheet, sir. It seems to have your signature on that; did
you sign that?


 Mr. Williams: Yes, sir.


 THE COURT: And did you sign the back as well?


 Mr. Williams: Yes, sir.


 THE COURT: And did you have an opportunity to go over this with your
attorney?


 Mr. Williams: Yes, sir.


 THE COURT: Did you have an opportunity to ask any questions about it?


 Mr. Williams: Uh, yes, sir.


 THE COURT: Do you feel that you understand all of your options?


 Mr. Williams: Fairly, yes.


 THE COURT: Okay. When you say fairly, do you need additional time to
discuss it with your attorney?


 Mr. Williams: No, I don't, I don't guess.


 THE COURT: Okay. Let me say for the record, if you need additional time
-- if you have any concerns --


 Mr. Williams: No, I'm just in a state of -- I don't know, you know.


 THE COURT: Well, you tell me. I mean, I can't make the decision for you. 
Would you like some additional time to talk to him about it?


 Mr. Williams: No, sir.


 THE COURT: Are you ready to go forward?


 Mr. Williams: Yes, sir.


 THE COURT: Are you sure of that?


 Mr. Williams: I'm sure.


 THE COURT: Okay. All right. On the front, sir, is -- well, actually, on the
front of this agreed plea recommendation sheet is what you've been charged with, and
it recites that the State is willing to reduce it to lesser included offense of deadly
conduct.

 On the back there are certain rights that you have, and did you go over those
with your attorney as well?


 Mr. Williams: Yes, sir.


 THE COURT: And did you know by signing that, that you were waiving
certain rights?


 Mr. Williams: No.


 THE COURT: Well, let me ask you this. You know that there's a jury
waiting to try this case?

 

 Mr. Williams: Yes, sir.


 THE COURT: And you know that that jury would be called upon to consider
whether or not you're guilty or innocent of the indicted charges; do you understand
that?


 Mr. Williams: Yes, sir.


 THE COURT: Do you know that by agreeing to this, you're telling me you
don't want a jury to consider whether or not you're guilty or innocent. In fact, you
want to just simply plead guilty to the lesser included offense and have the others,
what we call taken into consideration and dismissed.


 Mr. Williams: Yes, sir.


 THE COURT: Is that what you want to happen?


 Mr. Williams: Yes, sir.


 THE COURT: Okay. And you understand that nobody can make you waive
that jury?


 Mr. Williams: I didn't think they did.


 THE COURT: Okay. You have to give it up.


 Mr. Williams: I did give it up.


 THE COURT: And are you giving it up voluntarily?


 Mr. Williams: Yes, sir.


 THE COURT: Are you doing so of your own free will?


 Mr. Williams: Yes.

 

 THE COURT: Is anybody forcing you to do this or making you do is [sic]?


 Mr. Williams: Well, I didn't actually do no deadly weapon to them boys,
that's the reason.


 THE COURT: It's a deadly conduct, not a deadly weapon.


 Mr. Williams. Yes, sir, I understand that.


 THE COURT: Okay. Has anybody forced you to do this?


 Mr. Williams: No.


 THE COURT: Made you do it?


 Mr. Williams: No, sir.


 THE COURT: I mean, is this what you want to do?


 Mr. Williams: Yes, sir.


 THE COURT: Do you understand -- well, okay, sir. Sir, to the charge, the
lesser included offense of deadly conduct, in Cause No. 14,513, sir how do you
plea[d], guilty or not guilty?


 Mr. Williams: Guilty.


 THE COURT: And are you pleading guilty because you are guilty and for no
other reason?


 Mr. Williams. Right.


 THE COURT: Is that a yes?


 Mr. Williams: Yes.


 THE COURT: Has anybody forced you into pleading guilty, made you plead
guilty?


 Mr. Williams: No.


 THE COURT: Talked you into it?


 Mr. Williams: No.


 In addition to these oral warnings, Williams and his attorney signed an agreed plea
recommendation form. It is specifically noted in the agreement that the plea is an "open plea." 
Williams acknowledged that he and his attorney had read the document, that Williams understood
it, and that he was freely, voluntarily, and intelligently entering the plea of guilty. The agreement
contains a judicial confession and a waiver of a jury trial. The document confirms the agreement as
presented orally to the trial court (charge reduced to deadly conduct, punishment range was two to
ten years and $10,000.00 fine, another case considered, no recommendation as to punishment). 
Williams was admonished both orally and in writing; either method complied with Texas law. See
Tex. Code Crim. Proc. Ann. art. 26.13(d). 

 The record in this case shows Williams' guilty plea was accepted only after the trial court
made certain Williams' guilty plea was free and voluntary rather than the product of coercion by or
force from an outside influence. Several weeks later, and now again on appeal, Williams claimed
that his August guilty plea was involuntary and should not have been accepted by the trial court. 
However, the record of the plea proceeding does not support the conclusion that the trial court was
accepting an involuntary guilty plea at the time Williams entered his plea.

II. Withdrawal of Guilty Plea

 Williams also contends the trial court erred by denying his motion to withdraw his guilty
plea. Once a trial court has accepted a defendant's guilty plea and taken the issue of sentencing under
advisement, an accused's guilty plea may be withdrawn only if the trial court, acting within its
discretion, permits such withdrawal. Labib v. State, 239 S.W.3d 322, 331 (Tex. App.--Houston [1st
Dist.] 2007, no pet.).

 In this case, the trial court accepted Williams' plea August 14, 2007. The court then ordered
the preparation of a presentence investigation (PSI) report, took the issue of punishment under
advisement, and continued the case until September 17 for sentencing. At that September sentencing
hearing, Williams expressed his desire to withdraw his guilty plea. The trial court took no action
on Williams' plea withdrawal motion; instead, the court continued the case until September 19. 
When the hearing resumed, the trial court formally denied Williams' motion to withdraw his guilty
plea and assessed his punishment at eight years' imprisonment. 

 Later, at a hearing on his motion for new trial, Williams testified he had believed the
negotiated plea agreement called for a charge reduction and a sentence of community supervision. 
He held this (mistaken) belief despite acknowledging that the trial court had specifically warned him
that the plea agreement called for an "open plea." 

 Trial judges have a solemn obligation to every defendant who comes before their courts to
ensure that those accused of criminal wrongdoing appear before a fair, just, and impartial tribunal. 
But trial judges also have the duty to the public to operate their courts in an efficient manner. 
Neither fairness nor efficiency may be accomplished if parties are permitted to engage in a protracted
series of seemingly unwarranted delays. 

 The record shows that this case had been previously continued by the defense on numerous
occasions. For the week beginning Monday, August 13, 2007, the trial court had specially set aside
the entire week to try only Williams' case, time that could have been devoted to other pressing
matters. Yet, when voir dire had been scheduled to begin that Tuesday (and with a jury waiting in
the wings), Williams tried to (a) fire his court-appointed counsel, (b) obtain a continuance, and
(c) seek permission from the trial court to hire new counsel (which was also denied based on the trial
court's observation that Williams had been claiming for over a year that he was making efforts to hire
new counsel but had never done so). The trial court then took a brief recess to permit Williams to
discuss his impending trial with his attorney and to discuss a potential plea agreement with the
prosecutor. 

 After this recess, the State and Williams informed the trial court that the parties had reached
a negotiated plea agreement calling for Williams to plead guilty to the lesser included offense of
deadly conduct and submit the issue of punishment to the trial court's discretion. The paperwork
about the guilty plea clearly stated the issue of punishment was "open" to the discretion of the trial
court. 

 During the plea hearing, the trial court provided Williams with multiple opportunities to
withdraw his guilty plea, to claim that he did not understand the ramifications of his plea, and/or to
seek additional explanations from his lawyer about the substance of the plea process. Williams took
advantage of none of these opportunities. Thus, confident that Williams' plea was voluntary, the trial
court accepted the plea, took the matter of punishment under advisement, and continued the case so
that the PSI report could be prepared.

 Yet, once the date arrived for formal sentencing, Williams was unwilling to accept the
consequences of his guilty plea; instead, he wanted to start the process over anew. The trial court
could have reasonably interpreted these actions as gamesmanship, requiring further delay. 

 Additionally, and in stark contrast to Williams' claims at the September sentencing hearing,
Williams' earlier responses at the August plea hearing had clearly supported the belief that Williams
understood the terms and consequences of his plea agreement, that his jury waiver was intelligent
and voluntary, that Williams knew "there was no going back" once his plea was accepted by the trial
court, and that Williams affirmatively knew his punishment would be assessed solely by the trial
court. The trial court might have reasonably viewed this sudden change of heart with a great degree
of skepticism regarding the depth of Williams' sincerity.

 Given these various considerations, and given the wide range of discretion available to the
trial court in deciding whether an accused should be permitted to withdraw his or her guilty plea, we
cannot say the trial court's ruling fell outside the wide zone of reasonable disagreement.

Conclusion

 Finding no error in the proceedings below, we affirm the trial court's judgment.




 Jack Carter

 Justice


Date Submitted: August 11, 2008

Date Decided: August 13, 2008


Publish
1. This case has been transferred to this Court as part of the Texas Supreme Court's docket
equalization program.



01).
            The first factor requires consideration of the magnitude of the prejudicial effect of the State's
argument. The State did not explicitly say that Duvall was an alcoholic or that as an alcoholic he
would again drive while intoxicated. The State did not emphasize or repeat the erroneous comments
and the comments, formed a rather small portion of the State's entire closing argument. Thus, the
degree of misconduct was relatively minor and therefore favors a finding of harmless error. 
            Under the second factor, we must consider the measures adopted to cure the improper
argument. In many instances, an instruction to the jury to disregard improper argument is sufficient
to cure the error. See Dinkins, 894 S.W.2d at 357; see also Moore v. State, 999 S.W.2d 385, 405–06
(Tex. Crim. App. 1999). The trial court agreed there was no evidence Duvall was an alcoholic and
instructed the jury to "take the evidence that was presented to them and not anything that wasn't
evidence." While this curative instruction could have been more explicit in instructing the jury to
disregard the argument, it instructed the jury no evidence was present that Duvall was an alcoholic
and that the jury was to base its decision on the evidence presented. Thus, the measures adopted to
cure the improper argument favor a finding of harmless error.
            As to the third factor, while there is ample evidence supporting the verdict, there is some
evidence on which a rational jury could have concluded the State failed to meet its burden. 
            The State did present persuasive evidence Duvall had been driving while intoxicated. Duvall
admitted drinking. He informed Earnest he had drunk "about three beers" that night. Earnest said
he smelled a "deep chest odor of alcohol" from Duvall, contrasting that to an odor from an open
container of an alcoholic beverage. He further found unopened containers of alcohol in Duvall's
vehicle. While Heather Woodruff, an employee of America Medical Response, treated Duvall for
his injuries, she noticed an odor of alcohol. Cofer testified Duvall had slurred speech and "was not
exactly steady on his feet." Cofer also stated there was a "general mall [sic] odor about the situation
that tended to make me think that alcohol was involved." Earnest testified he observed all six clues
of intoxication when he performed the HGN test. Further, Duvall refused to submit a specimen of
his breath into the intoxilyzer or to perform either the walk-and-turn or the one-legged stand sobriety
tests. Thus, the State presented considerable evidence Duvall was driving while intoxicated.
            Duvall's conviction was not absolutely certain. Neither Cofer nor Watson noticed an odor
of alcohol on the defendant. Cofer testified Duvall had slurred speech and "was not exactly steady
on his feet," but does not remember smelling any alcohol when he talked with Duvall. Watson
testified he did not smell any alcohol, but admitted his primary concern was the welfare of Duvall. 
Although Woodruff and Earnest did notice an odor of alcohol, the fact the other witnesses did not
detect such odor could create doubt as to how strong the odor was. Duvall did fail the HGN test
according to Earnest. However, evidence indicates the test was not performed "exactly" as the
officer was trained. Duvall was a sixty-nine-year-old man who had just been in a severe car
accident. We cannot conclude Duvall's conviction was certain. While there is significant evidence
indicating Duvall was intoxicated, a conviction was not a foregone conclusion. The third factor does
not clearly weigh for or against a finding of harmless error.
            After carefully balancing the foregoing factors, we conclude the error to be harmless in this
case. We affirm the judgment of the trial court.


                                                                        Jack Carter
                                                                        Justice

Date Submitted:          February 19, 2004
Date Decided:             February 25, 2004

Do Not Publish