*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★  ★ ★ ★

# MEMORANDUM OPINION

No. 04-08-00566-CR

Ramiro **RAMOS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 229th Judicial District Court, Starr County, Texas
Trial Court No. 07-CRS-354
Honorable Alex William Gabert, Judge Presiding

Opinion by:  Marialyn Barnard, Justice

Sitting:  Sandee Bryan Marion, Justice
Rebecca Simmons, Justice
Marialyn Barnard, Justice

Delivered and Filed: October 7, 2009

AFFIRMED

Ramiro Ramos was convicted of murder.  On appeal, Ramos contends the trial court erred:

(1) in denying his motion to suppress; (2) in failing to give the jury proper instructions regarding the

voluntariness of his statement, and the lesser-included offense of criminally negligent homicide; (3)

in failing to hold an adequate inquiry into his competence; and (4) in failing to find there was

evidence to support a finding of incompetence.  We affirm the trial court's judgment.

## BACKGROUND

On June 6, 2007, Baudelio Perez and Eduardo Solis were on the patio of a friend's home, which was next to the home of Delia Ramirez, Ramos's aunt. Perez testified he saw Ramos get out of his truck and walk toward Ramirez's house. According to Perez, Solis went out to meet Ramos. Perez testified Ramos was holding a semi-automatic handgun, and the two men began to argue. Perez further testified that when he saw the handgun he hid behind a wall, and he heard more arguing, a scuffle, and a gunshot. Perez stated that after Ramos left he went over to Ramirez's property and discovered Solis's body lying on the ground. Perez called 911.

A Hidalgo County Deputy Sheriff and his partner were dispatched to the scene around 5:50 p.m. The deputy alerted the Starr County Sheriff's Office that Ramos was a possible suspect. Shortly thereafter, Ramos was taken to the Starr County Sheriff's Office where he spoke with Investigator Jose J. Moreno. Ramos gave a videotaped statement. At trial, the videotaped statement was admitted into evidence over objection by defense counsel.[1]

## DISCUSSION

### A. Motion to Suppress

In his first issue, Ramos contends the trial court erred in denying the motion to suppress his statement, arguing he did not knowingly, intelligently, and voluntarily waive his rights as set forth in article 38.22, section 3 of the Texas Code of Criminal Procedure. Ramos claims that although Investigator Moreno read him his rights, Investigator Moreno did not properly explain what Ramos was signing when he signed the written waiver. According to Ramos, Investigator Moreno obtained

---

[1] Portions of the interview were in Spanish, and both parties agreed that a copy of the transcription of the interview could be given to each juror with the trial court's permission. The parties agreed, however, that the transcription was not to be admitted and was to be only used for the purposes of aiding the jurors in following along and understanding the video statement.

Ramos's initials and signature on the waiver form through deception and trickery. Ramos claimed Investigator Moreno told him the waiver form was merely an acknowledgment that he had been read his rights.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. 1997). Under this standard, we give "almost total deference to the trial court's determination of historical facts[,]" especially when the trial court's fact findings are based on an evaluation of the witnesses' demeanor and credibility. *Id*. We also "afford the same amount of deference to the trial court's rulings on 'application of law to fact questions,' also known as 'mixed questions of law and fact,' if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor." *Id*. However, we apply a de novo review to all other mixed questions of law and fact. *Id*.

Article 38.22 of the Texas Code of Criminal Procedure addresses the admissibility of oral and written statements and codifies the procedural safeguards outlined in *Miranda v. Arizona*, 384 U.S. 436, 467, 478-79 (1966). *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon 2005); *see also Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995) (stating Texas statutory warnings codified in article 38.22 comply with *Miranda*). Under article 38.22, section 3, an oral statement resulting from a custodial interrogation is admissible only if an officer warns the defendant of his *Miranda* rights and the accused executes a knowing, intelligent, and voluntary waiver of those rights. *See* TEX. CODE CRIM PROC. ANN. art. 38.22 § 3.

To determine whether an accused effectively executed a valid waiver of rights, we must decide whether the waiver was a "product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Ripkowski v. State*, 61 S.W.3d

378, 384 (Tex. Crim. App. 2001). We must also determine whether the waiver was given "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran*, 475 U.S. at 421; *Ripkowski*, 61 S.W.3d at 384. An express waiver is not necessary, and the trial court may find facts and evidence sufficient to support an inference of waiver. *Rocha v. State*, 16 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Oliver v. State*, 29 S.W.3d 190, 191-92 (Tex. App.—San Antonio, 2000, pet. ref'd) (holding waiver can be inferred "where an oral confession contains a recitation of the art[icle] 38.22 warnings and the defendant indicates he understands his rights and proceeds without hesitation to participate in the interview."). We consider the totality of the circumstances when determining whether an accused effectively waived his rights and thereby made a statement voluntarily. *Moran*, 475 U.S. at 421.

After reviewing the totality of the circumstance surrounding Ramos's statement, we hold Ramos knowingly, intelligently, and voluntarily waived his rights. *See id*. The record reflects that after introducing himself, Investigator Moreno asked Ramos whether he understood English. Ramos indicated he could understand English and could even read a little bit of English, but he could not write in English. Investigator Moreno then asked Ramos whether he would like his rights read to him in English or Spanish, and Ramos requested they be read in English. Investigator Moreno told Ramos the interview was being recorded and read Ramos the article 38.22 rights. Investigator Moreno asked Ramos whether he understood the rights, and Ramos stated he did. At that point, Investigator Moreno asked Ramos to sign paperwork confirming he was read his rights. Investigator Moreno said, "Okay. I am going to ask you to sign this paper for me, Mr. Ramos. This paper only indicates that I have read the rights to you. I need your signature right there, sir. Okay, Mr. Ramos. Do you understand the warnings that I have read you?" Ramos said "[y]es," and initialed and signed

the paperwork. After Ramos initialed and signed the waiver form, Investigator Moreno corrected his previous description of the paperwork stating,"Okay. What you just signed right there, Mr. Ramos, is that you are waiving your rights and you are willing to talk to me." Ramos acknowledged this and then began to discuss the circumstances surrounding Solis's murder. Ramos said Solis insulted him and he took out his gun and began hitting Solis with the barrel of the gun. Ramos said he hit the safety trigger when he hit Solis with the barrel of the gun, and then "all I heard was the noise when it went off. That's all I know."

Ramos complains Investigator Moreno's statements amounted to deception or trickery, rendering his waiver involuntary. In light of the totality of the circumstances, we disagree. Although Investigator Moreno first stated the paperwork was merely an acknowledgment that Ramos was read his rights, he corrected the misstatement by specifically stating that by signing the paperwork Ramos was waiving his *Miranda* rights.

Moreover, during the interview, Ramos stated he wanted to stop the interview and invoke his right to remain silent. At that point, Investigator Moreno told Ramos he could end the interview and no more questions would be asked. However, Ramos changed his mind and continued with the interview. Ramos's request to stop the interview after being questioned for some time by Investigator Moreno demonstrates Ramos was not under the influence of deception or coercion when he waived his rights and made his statement. Ramos clearly knew he could stop the interview at any time. Ramos's actions demonstrate he understood his rights and the consequences of waiving them. *See Oliver v. State*, 29 S.W.3d 190, 192 (Tex. App.—San Antonio, 2000, pet. ref'd) (holding that invocation of right to counsel demonstrates defendant understood his rights when interview began and waived them).

Given the totality of the circumstances, we hold Ramos was fully aware of both the nature of his rights and the consequences of abandoning them. He knowingly, intelligently, and voluntarily waived his rights before he gave his statement. *See Moran*, 475 U.S. at 421; *Ripkowski*, 61 S.W.3d at 384. Accordingly, the trial court did not abuse its discretion in denying Ramos's motion to suppress, and we overrule his first issue.

**B. Jury Instruction**

In his next two issues, Ramos contends the trial court committed reversible error by refusing to give the jury instructions regarding: (1) the voluntariness of his statement, and (2) the lesser-included offense of criminally negligent homicide.

*1. Voluntariness*

An instruction on voluntariness is required only if "based on the evidence presented at trial, a reasonable jury could conclude that the statement was not voluntary." *Vasquez v. State*, 225 S.W.3d 541, 544 (Tex. Crim. App. 2007); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.22 §§ 6, 7 (Vernon 2006). Based on the evidence set forth in our discussion of issue one, we hold there was some evidence from which the jury could have concluded the statement was involuntary. *See Vasquez*, 225 S.W.3d at 544-45. Accordingly, we hold the trial court erred in failing to instruct the jury on the voluntariness of Ramos's statement. However, we must still determine whether the error caused sufficient harm to require reversal. *See Airline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). The degree of harm necessary for reversal depends upon whether the error was preserved. *Id*. If the error was preserved by a proper objection to the charge, the defendant need only show the existence of "some harm" to obtain a reversal. *Id*. On the other hand, if the error was not preserved, the defendant must show

the harm was egregious to obtain a reversal. *Id*. An error which results in egregious harm is an error that affects "the very basis of the case," deprives the defendant of a "valuable right," or "virtually affect[s] a defensive theory." *Almanza*, 686 S.W.2d at 172.

Ramos admits he did not object to the trial court's failure to include an instruction on voluntariness. Therefore, Ramos must establish the existence of egregious harm to obtain a reversal. *See Airline*, 721 S.W.2d at 351; *Almanza*, 686 S.W.2d at 171. To determine whether error is egregious, we must consider "the entirety of the charge itself, the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole." *See Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

The State presented evidence from Perez, who testified he saw Ramos approach Solis with a semi-automatic handgun, heard the men arguing and then heard a gunshot. He thereafter found Solis on the ground surrounded by blood. Ramos claimed he did not intentionally or knowingly kill Solis. Rather, Ramos's defensive theory was that the gun discharged during his altercation with Solis. The jury was instructed on both murder and manslaughter, thereby encompassing both the State's and Ramos's theories of the case. Voluntariness of Ramos's statement was not central to his defense. Although the admission of the statement was damaging, given the evidence, the parties' theories, and the jury charge, the statement did not rise to the level of egregious harm. *See Sanchez*, 209 S.W.3d at 121. We therefore overrule Ramos's second issue.

### 2. *Criminally Negligent Homicide*

A defendant is entitled to an instruction on a lesser-included offense if: (1) proof of the charged offense includes the proof required to establish the lesser-included offense; and (2) there is

some evidence in the record that would permit a jury rationally to find that, if the defendant is guilty, he is guilty only of the lesser offense. *Ferrel v. State*, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001); *Trujillo v. State*, 227 S.W.3d 164, 168 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). "We must review all the evidence presented at trial to make this determination." *Jackson v. State*, 248 S.W.3d 369, 371 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

"Criminally negligent homicide is a lesser included offense of murder." *Saunders v. State*, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992); *Jackson*, 248 S.W.3d at 371. Therefore, we need only determine whether some evidence exists to show Ramos was guilty only of criminally negligent homicide. *See Ferrel*, 55 S.W.3d 589. "The key to criminal negligence is the failure of the actor to perceive the risk created by his conduct." *Jackson*, 248 S.W.3d at 371. Merely because an actor did not intend the result does not necessarily entitle him to a jury instruction on criminally negligent homicide. *Trujillo*, 227 S.W.3d at 168.

Here, the record does not contain evidence that Ramos lacked an awareness of the risk. *See Jackson*, 248 S.W.3d at 371-72. Ramos got out of his truck with a semi-automatic handgun in his hand. Ramos admitted he hit Solis with the barrel of the gun in response to Solis's allegation that Ramos stole a cell phone. Ramos further stated he hit the safety when he hit Solis with the barrel of the gun. This evidence is sufficient to show Ramos was "not only aware of the risk posed by the weapon, but [was] choosing to exploit that risk." *See Jackson*, 248 S.W.3d at 372; *see also Thomas v. State*, 699 S.W.2d 845, 850-52 (Tex. Crim. App. 1985) (holding that claim of accidental discharge does not necessarily raise an issue of criminally negligent homicide). We overrule Ramos's third issue.

## C. Competency

Finally, Ramos argues the trial court did not have sufficient evidence to support a finding that he was competent to stand trial. Ramos also argues the trial court abused its discretion in failing to conduct an adequate inquiry into his competence to stand trial under the Texas Code of Criminal Procedure and Due Process Clause of the United States Constitution.

During a preliminary hearing held to discuss Ramos's Motion Suggesting Incompetency and Request for Examination, Ramos's trial counsel stated he was unsure whether Ramos understood the legal concepts and proceedings, and was concerned because a psychiatrist diagnosed Ramos with "[s]chizophrenia or some other preliminary diagnosis." According to Ramos, these statements were enough to put the trial court on notice that Ramos's competence was at issue, requiring an adequate inquiry, and there was enough evidence to support a finding of incompetence.

Under the Due Process Clause of the United States and Texas Constitutions, a defendant must be competent when he is tried. *See* U.S. CONST. amends. V, XIV; TEX. CONST. art. I, § 19; *see also* TEX. CODE CRIM. PROC. ANN. arts. 46B.003, 46B.004, & 46B.005 (Vernon 2006). In Texas, a defendant is presumed competent to stand trial unless he is proved to be incompetent by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 46B.003(b) (Vernon 2006). "If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the trial court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial." TEX. CODE CRIM. PROC. ANN. art. 46B.004(b) (Vernon 2006). Additionally, if the defendant suggests he is incompetent, the trial court must conduct an informal inquiry into whether there is some evidence from any source to support a finding that the defendant may be incompetent to stand trial. *Id.*

A defendant is considered incompetent to stand trial if he does not have a rational and factual understanding of proceedings against him. *Id.* art. 46B.003(a)(2). If the trial court determines there is some evidence to support a finding of incompetency, the trial court must order an examination to be undertaken to determine if the defendant is competent to stand trial. *Id.* art. 46B.005(a). "Some evidence" of incompetency is "a quantity more than none or a scintilla." *Sisco v. State*, 599 S.W.2d 607, 613 (Tex. Crim. App. 1980). However, it is not simply enough for trial counsel to simply allege unspecified difficulties in communicating with the defendant. *Moore v. State*, 999 S.W.2d 385, 394 (Tex. Crim. App. 1999). A trial court's decision not to conduct a competency inquiry is reviewed under an abuse of discretion standard. *Id.* at 393.

During the preliminary hearing, the trial court noticed Ramos was limping and asked about his leg. Ramos told the trial court his leg was infected. The State pointed out Ramos seemed knowledgeable of his health issues and capable of understanding the nature of the proceedings against him. The State asserted Ramos kept his promise to appear at the hearing, which indicated Ramos was aware of the importance of appearing at scheduled court dates. Ramos's trial attorney then stated he was able to talk with Ramos, but he was unsure whether Ramos understood the legal concepts discussed during their conversations. Ramos's attorney also stated he wanted to bring Ramos's diagnosis of schizophrenia to the trial court's attention. The trial court ended the proceeding by stating, "The record will show that, uh, we are going to proceed with the matter of the selection of the jury then we'll come back to – for whatever to be discussed, not uh, no decision being made."

While defense counsel expressed concern about Ramos's hallucinations and possible schizophrenia diagnosis to the trial court, it was not enough for defense counsel to merely express

his concerns to the trial court in order to compel the trial court to conduct an adequate inquiry into Ramos's competence. *See Moore*, 999 S.W.2d at 394. To properly raise the issue of Ramos's incompetence, defense counsel was required to provide the trial court with specific information that illustrated defense counsel's present inability to communicate with Ramos. *See id.* Here, no such information was provided. Rather, the trial court properly handled the issue of competency and gave defense counsel time to later raise the issue of competency and submit proper evidence to make a request to the trial court to conduct another hearing regarding the issue of Ramos's competence. At no time did defense counsel again raise the issue for the trial court's consideration or bring forth a doctor's report to illustrate Ramos's inability to communicate.

Because there is no evidence from any source in the record to suggest to the trial court that Ramos was incompetent to stand trial, we hold the trial court did not abuse its discretion in making a decision not to conduct a more formal inquiry on the issue of Ramos's competence, and the trial court had sufficient evidence to support a finding of competence. Ramos's last two issues on appeal are overruled.

### CONCLUSION

Based on the foregoing, we affirm the trial court's judgment.

Marialyn Barnard, Justice

DO NOT PUBLISH