# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00510-CV

### In the Matter of J. A. B.

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. J-30,362, HONORABLE W. JEANNE MEURER , JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The juvenile court found that J.A.B. engaged in delinquent conduct by committing the offense of aggravated assault with a deadly weapon and placed him on probation in the custody of his grandfather. J.A.B. contends that the evidence is factually insufficient to support the adjudication and that the court erred by admitting into evidence an oral statement he made to the police. We overrule these contentions and affirm the judgment.

On May 11, 2009, J.A.B. was fourteen years old and living with his mother, two siblings, and his mother's boyfriend, Mike James. James testified that J.A.B. was told by his mother to do some chores around the house, but he failed to do them. James said that when he saw J.A.B. "hooking up the [P]laystation to listen to music," he decided that "[J.A.B.] did not deserve any luxuries while doing his chores." James took the Playstation from J.A.B. and put it in the car. James testified that when he reentered the house, J.A.B. told him, "You don't have the right, you're not my f'ing dad, blah, blah, blah, things of that nature." Then, "he swung at me." James testified that he

"put [J.A.B.] on the floor" and "detained him." When James released J.A.B. after a brief struggle, J.A.B. hit James twice on his jaw.

James pushed J.A.B. about fifteen feet across the room, where J.A.B. picked up a metal pipe of the sort used to hang drapes. J.A.B. brandished the pipe and "looked as if he was extremely angry." James testified that he walked over to where J.A.B. was standing and took the pipe out of his hands. As James walked away with the pipe, J.A.B. rushed at him "swinging both fists." James again pushed J.A.B. away. This time, J.A.B. went to a cabinet and picked up a knife. J.A.B. opened the knife and held it in front of him with the blade pointing up. James testified that J.A.B. did not try to attack him with the knife, but he acknowledged giving a statement in which he said that "[J.A.B.] came at me like he was going to stab me." James said that he "warned" J.A.B., who threw the knife to the floor and again rushed at James with his fists swinging wildly. After James pushed J.A.B. away a third time, J.A.B. went to the kitchen and picked up a meat cleaver. James testified that he told J.A.B., who was standing about fifteen feet away from him, that "if you come at me with that meat cleaver this is going to get really bad so you have a choice, drop it, or this gets worse." James testified that J.A.B. dropped the cleaver and "came at me again." James seized J.A.B. and "detained him on the floor." After J.A.B. calmed down, James released him and called the police.

James vacillated when asked if he had felt threatened when J.A.B. brandished the various weapons. He testified that J.A.B. probably intended to hit him with the pipe, but that he made no attempt to do so and that he, James, "didn't feel any immediate danger." With respect to the knife, James testified that he feared imminent bodily injury at the time of the incident, but that

2

"after I had had the chance to calm down and think about it, I did not feel threatened." When pressed to give a yes or no answer, James said that he did not feel threatened by the knife. James initially testified that he felt threatened by the cleaver, but later denied having any such concern. James added that "[J.A.B.] was in a fight with a 29-year-old man who outweighs him by a good 80 pounds" and that, in his opinion, J.A.B. had been protecting himself "[i]n his own way."

Deputy Wesley James testified that he and another officer responded to a report of "a male attempting to stab another male with a knife."[1] The deputy said that when he and his partner arrived, James was sitting under a tree in the front yard, and J.A.B. was sitting on the front porch. The deputy testified that James and J.A.B. were both immediately handcuffed and frisked for weapons. Then, the deputy questioned J.A.B., who remained in handcuffs, while his partner spoke to James.

The deputy testified that before asking J.A.B. any questions, he advised him of his rights in his mother's presence. *See Miranda v. Arizona*, 384 U.S. 436 (1966). J.A.B. told the deputy that he understood his rights. The deputy testified that J.A.B. then gave this description of what had taken place:

> He basically told me he was having a bad day, that he lost his temper with Mike over Mike, you know, requesting him to help out with chores around the house, cleaning and whatnot. . . . He lost his temper and began to fight with James—or Mike, I'm sorry, and the fight turned physical, the argument turned physical as far as, you know, punching, kicking, things of that nature. It was a fight, fist fight at that point. After several attempts from Mike to restrain [J.A.B.], [J.A.B.] attacked him with a knife, a meat cleaver, a pipe, you know, basically he kept coming at him. And when I asked him what his intentions were with the knife, what he was planning to

---

[1] We will refer to Deputy James as "the deputy" to distinguish him from Mike James.

do, he clearly stated [objection overruled] . . . that he had intentions of stabbing Mike with the knife.

The State's petition alleged in three paragraphs that J.A.B. intentionally and knowingly threatened James with imminent bodily injury with a knife, a cleaver, and a pipe, each of which was alleged to be a deadly weapon. *See* Tex. Penal Code Ann. §§ 22.01(a)(2), .02(a)(2) (West Supp. 2009). The juvenile court found all three allegations to be true. J.A.B. does not question the sufficiency of the evidence with regard to the alleged threats of imminent bodily injury, but he contends that the evidence is factually insufficient to support the court's finding that the assaults were aggravated by the use of deadly weapons.

Adjudications of delinquency are based on the criminal standard of proof. Tex. Fam. Code Ann. § 54.03(f) (West Supp. 2009). Therefore, we review the sufficiency of the evidence by applying the standards applicable to challenges to the sufficiency of the evidence in criminal cases. *In re E.P.*, 963 S.W.2d 191, 193 (Tex. App.—Austin 1998, no pet.). In a factual sufficiency review, we view all the evidence in a neutral light and determine whether the evidence supporting the verdict is so weak as to make the finding of guilt clearly wrong or manifestly unjust, or if the verdict is against the great weight and preponderance of the available evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

An object other than a firearm is a deadly weapon (1) if it is manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury, or (2) if it is capable of causing death or serious bodily injury in the manner of its use or intended use. Tex. Penal Code Ann. § 1.07(a)(17) (West Supp. 2009). J.A.B. argues that the State was required to prove that the

4

pipe, knife, and cleaver at issue were deadly weapons under both definitions because both definitions were alleged conjunctively in the petition. This assertion fails for two reasons. First, the State was permitted to amend the petition to allege the two definitions disjunctively.[2] Second, even if the petition had not been amended, proof that the objects were deadly weapons under either definition would have been sufficient. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991).

The pipe, knife, and cleaver were introduced in evidence and photographs of them are in the record. The pipe appears to be at least two feet long and one inch in diameter. The knife appears to have a blade approximately four inches long. The meat cleaver's blade appears to be about eight inches long.

The deputy testified that J.A.B. told him that he attacked James with the knife, cleaver, and pipe, and that he intended to stab James with the knife. Further, James admitted telling an officer minutes after the incident that J.A.B. "came at" him with the knife "like he was going to stab me." But even if we discount this testimony in light of James's testimony that J.A.B. never tried to hit him with the pipe or cut him with the knife or the cleaver, proof that J.A.B. attacked James with the alleged weapons was not required. In order to prove that an object is a deadly weapon in the manner of its use or intended use, it is not necessary for the State to prove that the actor attempted or even intended to use the object to seriously injure or kill another person. The State must prove only that the actor used or intended to use the object in a manner in which it was *capable* of causing serious bodily injury or death. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). From the uncontradicted evidence that J.A.B. brandished the pipe, knife, and cleaver in a

---

[2] J.A.B.'s assertion that the State's motion to amend was overruled is contradicted by the record.

threatening manner, the juvenile court could rationally conclude that J.A.B. intended to use these objects as weapons. Considering the size and nature of the objects, the court could rationally conclude that they were capable of causing serious bodily injury or death when used in the manner J.A.B. intended.

Viewing all the evidence in a neutral light, the court's conclusion that J.A.B. threatened James with the alleged deadly weapons was neither clearly wrong nor manifestly unjust, nor was it against the great weight and preponderance of the available evidence. Issue two is overruled.

J.A.B. contends that the court should not have admitted his oral statement to the deputy because it was obtained in violation of the family code. The admissibility of statements made by juveniles is governed by family code section 51.095. Tex. Fam. Code Ann. § 51.095 (West 2008). In this case, the juvenile court admitted J.A.B.'s statement pursuant to subsection (a)(2), which provides that a statement is admissible if it is made orally and contains "a statement of facts or circumstances that are found to be true and tend to establish the child's guilt, such as the finding of secreted or stolen property, or the instrument with which the child states the offense was committed." *Id*. § 51.095(a)(2). Subsection (a)(2) is analogous to code of criminal procedure article 38.22, section 3(c), governing the admission of statements by adults, and opinions construing the adult statute have been followed when applying the juvenile statute. Tex. Code Crim. Proc. Ann. art. 38.22, § 3(c) (West 2005); *see Meza v. State*, 577 S.W.2d 705, 708 (Tex. Crim. App. 1979); *S.D.J. v. State*, 879 S.W.2d 370, 374-75 (Tex. App.—Eastland 1994, writ denied); *Salazar v. State*, 648 S.W.2d 421, 422 (Tex. App.—Austin 1983, no pet.).

It was agreed below that J.A.B. was in custody when he was questioned by the deputy. Therefore, it was necessary that he be advised of his Fifth Amendment rights before the questioning began. *See In re Gault*, 387 U.S. 1, 55 (1967) (privilege against self-incrimination applies to juveniles); *Meza*, 577 S.W.2d at 708 (statutory predecessor to section 51.095(a)(2) did not dispense with *Miranda*). The deputy testified without contradiction that he advised J.A.B. of his *Miranda* rights before questioning. J.A.B. contends, however, that he was not shown to have waived those rights in the manner prescribed by family code section 51.09. Tex. Fam. Code Ann. § 51.09 (West 2008). This contention is without merit because section 51.095 expressly provides that it governs the admissibility of a juvenile's statement notwithstanding section 51.09. *Id*. § 51.095(a).

J.A.B. further contends that his statement to the deputy was not admissible under subsection (a)(2) because it did not lead to the discovery of the weapons. Under the statute, however, it is only necessary that the statement contain facts or circumstances that are found to be true and tend to establish the child's guilt. The example given, the discovery of stolen property or the instrument used in the offense, is illustrative only. *See Gunter v. State*, 858 S.W.2d 430, 448 (Tex. Crim. App. 1993) (construing article 38.22, section 3(c)). The statute is satisfied if it contains a single incriminating fact or circumstance that was unknown to law enforcement but later corroborated. *See Moore v. State*, 999 S.W.2d 385, 400-01 (Tex. Crim. App. 1999) (construing article 38.22, section 3(c)).

The evidence reflects that before arriving at the scene, the two deputies had been informed that one male had attempted to stab another male with a knife. There is no evidence that the deputies knew the identity of either person or that any other weapons had been wielded during

the fracas. On this record, when J.A.B. told the deputy that he had attacked James with a pipe and a meat cleaver, he disclosed incriminating facts not then known to law enforcement that were subsequently corroborated. We hold that section 51.095(a)(2) was satisfied, and the trial court did not err by admitting J.A.B.'s oral statement to the deputy. Issue one is overruled.

The juvenile court's judgment is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed: September 10, 2010