**Affirmed and Memorandum Opinion filed August 21, 2014.**



**In The**

# 𝔉ourteenth 𝔠ourt of 𝔄ppeals

## NO. 14-13-00657-CR

**DANIEL MARRITT STALEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court
Jefferson County, Texas
Trial Court Cause No. 08-04858**

## MEMORANDUM OPINION

Appellant raises nine issues in this appeal from an adjudication proceeding. Broadly speaking, he asks us to consider whether the trial court erred by (a) denying a motion for new trial, (b) failing to take appropriate measures for the consideration of his disability, (c) interfering with the plea-bargaining process, and (d) ordering the payment of administrative fees. Finding no error, we overrule each of appellant's issues and affirm the trial court's judgment.

## BACKGROUND

The facts of this case involve two different trial causes, but the appeal is limited to just one. In cause number 08-04858, which is the focus of this appeal, appellant was indicted for assault on a public servant. The incident allegedly occurred in 2008, and appellant pleaded no contest to the offense as charged. The trial court deferred an adjudication of guilt and placed him on community supervision for a period of six years.

In 2013, the State moved to adjudicate appellant's guilt, alleging that he had violated the terms of his community supervision by assaulting his own mother. Based on that same factual allegation, the State filed a separate indictment in cause number 13-16365, charging appellant with aggravated assault. Appellant pleaded true in response to the motion to adjudicate, and the trial court sentenced him to ten years' imprisonment. In the other cause, appellant pleaded guilty to aggravated assault and received a plea-bargained sentence of six years' imprisonment.

Appellant filed a motion for new trial, asserting that he was actually innocent of the aggravated assault against his mother. Appellant argued that he was suffering from a seizure at the time of the assault, which negated the requisite mens rea. Appellant requested an arrest of judgment in the assault case and a new trial on the motion to adjudicate. After conducting a single evidentiary hearing applicable to both cause numbers, the trial court denied the motion in its entirety.

## MOTION FOR NEW TRIAL

In multiple issues, appellant contends that the trial court erred by denying his motion for new trial. We review the trial court's denial of a motion for new trial for an abuse of discretion. *See Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). A trial court abuses its discretion when no reasonable view of the record

2

could support its decision. *See McQuarrie v. State*, 380 S.W.3d 145, 150 (Tex. Crim. App. 2012). As a reviewing court, we may not substitute our judgment for that of the trial court; instead, we may only determine whether the trial court's decision was arbitrary or unreasonable. *See Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). We consider the evidence in the light most favorable to the trial court's ruling and presume that the court made all reasonable fact findings against the losing party and in favor of the prevailing party. *See Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014).

During the hearing on the motion for new trial, appellant's mother testified that her son had a history of mental illness and that he did not intentionally assault her as the Stated had alleged. On the day of the alleged assault, the mother asserted that she was sitting in the kitchen having breakfast when appellant came running down the hall, screaming that "the sky was crackling." When appellant entered the kitchen, he experienced a grand mal seizure, causing him to move uncontrollably, foam at the mouth, and urinate on himself. The mother testified that appellant knocked over the table, which caused her to fall backwards in her chair. The mother said that she was injured by falling glassware in the process.

An officer with the Beaumont Police Department testified that he was dispatched to the scene after a neighbor reported that the mother had just run out of her home yelling, "Call the police. My son just assaulted me." When the officer arrived at the home, he saw appellant walking calmly in the front yard. The officer interviewed the mother, who had a small cut on her chin and the bridge of her nose. The mother explained the situation and said there had been no assault. The officer left, having determined that no crime had been committed.

Later that day, the mother drove from her home in Beaumont to a hospital in Port Arthur, complaining of chest pains. Doctors there determined that she was

having a gallbladder attack. During one of the mother's examinations, a nurse came to believe that the mother might have been stabbed. The hospital reported the possible stabbing to local police, and an officer from the Port Arthur Police Department came to the hospital to interview the mother. The Port Arthur officer testified that the mother did not want to talk to police, but that she eventually admitted that appellant may have stabbed her with a knife while he was having his seizure.

To follow up on his earlier investigation, the Beaumont officer was also dispatched to the hospital. The Beaumont officer opined that it was unusual for the mother to have driven to Port Arthur when closer hospitals were available in Beaumont. The mother explained that she chose the Port Arthur hospital because it had shorter wait times and she was pleased with the treatment her grandson had received there on an earlier occasion. The mother denied going to Port Arthur as a means of avoiding the Beaumont police.

The Beaumont officer testified that he found appellant waiting in the hospital lobby after arriving in Port Arthur. The Beaumont officer placed appellant in handcuffs, read him his rights, and conducted a brief investigation at the hospital. According to the Beaumont officer, appellant made the following confession: "I got in an argument with my mama, pushed her on the ground, stomped her in the head a few times, and stabbed her with a knife."

The trial court found that appellant had failed to demonstrate that he was actually innocent of assaulting his mother. We conclude that this finding is supported by the evidence. The trial court heard testimony from the Beaumont officer that appellant had admitted to assaulting his mother. This testimony was also corroborated by the Port Arthur officer, who said that the mother admitted that appellant might have used a knife to stab her. Even though the mother denied the

4

occurrence of an assault, the trial court was free to disbelieve her testimony and determine instead that she was merely trying to protect her son from conviction. The court did not abuse its discretion by denying the motion for new trial. *See Tollett v. State*, 799 S.W.2d 256, 259 (Tex. Crim. App. 1990) (a court does not abuse its discretion when its decision is based on conflicting evidence).

## DISABILITY CLAIMS

### A.    Competency Trial

In his first of two disability claims, appellant argues that he was incompetent to enter a plea of true and that the trial court erred by failing to conduct a formal competency trial. We begin our analysis with an overview of the statutory scheme relating to competency trials.

A defendant is incompetent to stand trial if he lacks a sufficient present ability to consult with his attorney with a reasonable degree of rational understanding, or if he lacks a rational as well as a factual understanding of the proceedings against him. *See* Tex. Code Crim. Proc. art. 46B.003(a). Any party may suggest that a defendant is incompetent, including the court on its own motion. *See id.* art. 46B.004(a). Upon a suggestion of incompetency, the court must determine by informal inquiry whether there is some evidence from any source that would support a finding of incompetency. *See id.* art. 46B.004(c). In making this determination, the court must consider only the evidence tending to show incompetency, "putting aside all competing indications of competency, to find whether there is some evidence, a quantity more than none or a scintilla, that rationally may lead to a conclusion of incompetency." *See Ex parte LaHood*, 401 S.W.3d 45, 52–53 (Tex. Crim. App. 2013) (citing *Sisco v. State*, 599 S.W.2d 607, 613 (Tex. Crim. App. [Panel Op.] 1980)). If the court makes such a determination

5

after the informal inquiry, then it must conduct a formal competency trial. *See* Tex. Code Crim. Proc. art. 46B.005(a)–(b).

The trial court in this case conducted an initial inquiry into appellant's competency to stand trial when it referred appellant to a psychiatrist. The psychiatrist conducted her examination and filed her reports within three weeks of appellant's adjudication proceeding. The psychiatrist diagnosed appellant with "psychosis, not otherwise specified." Despite this mental disease, the psychiatrist opined that appellant was competent to stand trial and that he did not suffer from an impairment that would impact his capacity to engage with trial counsel.

The psychiatrist explained that her finding of competency was based on several factors. The first factor referred to the results of a standardized competency test, for which appellant had received a passing score. Appellant was able to discern the locations and identities of courtroom participants, such as the judge, jury, and attorneys. Appellant was also able to answer basic questions regarding court personnel and procedure, such as the roles of each of the participants. When appellant was asked about how he could aid his attorney in his own defense, appellant stated, "Tell him the truth about what happened the day the event happened."

The competency test also included a hypothetical scenario about a man who had robbed a convenience store. Appellant correctly identified what information the man should tell his attorney in preparation for his upcoming trial. Based on appellant's responses, the psychiatrist found that appellant "had the ability to comprehend questions asked of him, follow instructions, and provide historical information." He was also "able to relate to the examiner in a rational and controlled manner."

6

Among the other factors that were considered, the psychiatrist noted that appellant rationally understood the charges against him. Appellant was able to describe the events of the alleged assault, and he knew the potential consequences of the pending criminal proceedings. The psychiatrist further found that appellant was able to reason logically and testify if he so chose.

The trial court opened the adjudication proceeding by immediately referring to the psychiatrist's reports. The court stated, "Let the record reflect that I have had [the psychiatrist] look at Mr. Staley and we have done a sanity report and a mental illness report. He is not mentally ill, and he is competent to stand trial, if my memory is right." The trial court may have been mistaken on the question of mental illness, but neither side objected. Both the prosecutor and defense counsel appeared to agree with the trial court's overall assessment on competency. There was no additional request for a formal competency trial.

Appellant argues that he was entitled to a competency trial because the record showed that he suffered from several handicaps, including psychosis, epilepsy, and other conditions raising a "suggestion" of incompetency. Appellant invokes the incorrect legal standard. A suggestion of incompetency is sufficient to trigger an informal inquiry, but not a formal competency trial. *See id.* art. 46B.004(c-1). The fact that a defendant may be mentally ill does not show that he is incompetent or deserving of a competency trial. *See Moore v. State*, 999 S.W.2d 385, 395 (Tex. Crim. App. 1999) ("Evidence of mental impairment alone does not require that a special jury be empaneled where no evidence indicates that a defendant is incapable of consulting with counsel or understanding the proceedings against him.").

As stated above, the trial court's informal inquiry must yield "some evidence from any source" that the defendant is incompetent before the court is required to

conduct a competency trial. *See* Tex. Code Crim. Proc. art. 46B.004(c); *id.* art. 46B.005(a)–(b). The trial court's inquiry did not yield any such evidence here, and appellant did not produce any other evidence before the adjudication proceeding. Based on the psychiatrist's finding that appellant was competent to stand trial, we conclude that the trial court did not err by failing to conduct a formal competency trial. *See Turner v. State*, 422 S.W.3d 676, 693 (Tex. Crim. App. 2013) (finding no fault in the trial court's failure to conduct a formal competency trial following the initial evaluations of a psychologist and a psychiatrist, who both deemed the defendant to be competent, and where no request for a competency trial had yet been made); *Rodriguez v. State*, 816 S.W.2d 493, 495 (Tex. App.—Waco 1991, pet. ref'd) (when a psychiatrist and a psychologist both conclude that the defendant is competent to stand trial, there is no indication, without additional evidence, demonstrating that the defendant's competency should be put in issue in a formal competency trial).

## B. Facilitator

Appellant argues next that the trial court erred by failing to appoint a facilitator who would "explain the proceedings to him" and make him "feel less confused." Appellant asserts that the appointment of such a facilitator was mandatory under both the Americans with Disabilities Act (the "Act") and the Supreme Court's decision in *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206 (1998). Appellant has not cited to any provision from the Act requiring such appointments, and the *Yeskey* case holds only that inmates in state prisons are covered by the Act, not that they are entitled to special facilitators during their criminal prosecutions.

Appellant received court-appointed counsel throughout the course of his proceedings. Defense counsel was available to appellant to explain the proceedings

and clarify any points that may have been confusing. In this function, defense counsel served as appellant's "facilitator." Appellant has not shown that the trial court reversibly erred by running afoul of the Act or by failing to appoint anyone else in addition to his lawyer.

## PLEA BARGAINING

In his next two issues, appellant contends that the trial court improperly interfered with the plea-bargaining process. Appellant's arguments focus exclusively on events arising in cause number 13-16365, which related to appellant's guilty plea for aggravated assault, not his adjudication of guilt for assault on a public servant.

According to appellant, the plea hearing in cause number 13-16365 occurred on the same day as the adjudication proceeding in cause number 08-04858, but later in the afternoon. The transcript from the plea hearing has not been included in our record.

We know from our research that appellant filed a notice of appeal in cause number 13-16365. We previously dismissed that appeal, however, because the trial court entered a certification that appellant had no right of appeal in that case. *See Staley v. State*, No. 14-13-00658-CR, 2013 WL 4816441, at *1 (Tex. App.— Houston [14th Dist.] Sept. 10, 2013, no pet.) (mem. op., not designated for publication). We will not reopen any issues arising out of cause number 13-16365 through an appeal in cause number 08-04858. Accordingly, we decline to address appellant's complaints that the trial court improperly interfered with the plea-bargaining process.

## ADMINISTRATIVE FEES

In his final two issues, appellant asserts that the trial court erred by assessing administrative fees against him without orally pronouncing those fees at the time of sentencing. The total administrative balance included $300 in supervision fees, $619 in court costs, and $376.84 in other fees denoted as "BMT CS" and "PRE-PSI." The trial court's judgment adjudicating guilt does not reflect that a separate fine was assessed, and there is no indication that any of the administrative fees represented a fine.

With few exceptions not applicable here, a trial court must orally pronounce the "sentence" in the defendant's presence. *See* Tex. Code Crim. Proc. art. 42.13, § 1(a). The sentence is "that part of the judgment, or order revoking a suspension of the imposition of a sentence, that orders that the punishment be carried into execution in the manner prescribed by law." *Id.* art. 42.02. The sentence includes fines, which are punitive in nature, but not court costs. *See Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011); *Weir v. State*, 278 S.W.3d 364, 366 (Tex. Crim. App. 2009).

In *Armstrong,* the Court of Criminal Appeals stated that court costs "need neither be orally pronounced nor incorporated by reference in the judgment" because they are compensatory rather than punitive. *See Armstrong*, 340 S.W.3d at 766–67. The administrative fees assessed in this case are likewise compensatory because they consist entirely of court costs and other fees that are non-punitive in nature. Following *Armstrong*, we conclude that the administrative fees did not need to be orally pronounced because they are not punitive or part of appellant's sentence. Therefore, the trial court did not err by assessing those fees after the oral pronouncement.

## CONCLUSION

The judgment of the trial court is affirmed.

/s/  Tracy Christopher
Justice

Panel consists of Justices Christopher, Jamison, and McCally.

Do Not Publish — Tex. R. App. P. 47.2(b).