

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00421-CR

Bernardo C. **HUERTA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 187th Judicial District Court, Bexar County, Texas
Trial Court No. 2022-CR-6940
Honorable Stephanie Boyd, Judge Presiding

Opinion by:     Lori Massey Brissette, Justice

Sitting:        Irene Rios, Justice
                Lori Massey Brissette, Justice
                H. Todd McCray, Justice

Delivered and Filed: May 21, 2025

AFFIRMED

Appellant Bernardo C. Huerta appeals the trial court's order revoking probation and sentencing him to eight years confinement with time served. He contends the trial court abused its discretion by accepting his plea of "true" without *sua sponte* conducting an inquiry into his competence to stand trial. Because we find no abuse of discretion, we affirm.

### FACTS

In July of 2023, Huerta entered into a plea bargain wherein he was convicted of the offense of robbery, sentenced to eight years confinement, and placed on community supervision subject to

certain conditions.[1] In November of 2023, a motion to revoke was filed asserting that he had failed to report to the Supervision Officer as directed and failed to provide proof of employment or SSI. He pleaded "true" to the violations and was ordered to complete a mental health evaluation while in custody. On February 15, 2024, the trial court entered its "Order Amending Conditions of Community Supervision" which added the following condition:

Participate in the Mental Health Initiative and comply with all rules, regulations, and instructions as directed by the Court and/or the Supervision Officer.

a. Comply with all rules, regulations, instructions and personnel of the Center for Health Care Services and participate in Substance Abuse and Psychological counseling, treatment, diagnostic evaluation and/or intervention as directed, or

b. Continue treatment with private psychiatrist and/or other mental health agency, including the Veterans Administration, and will provide verification of treatment attendance and medication compliance on a monthly basis.

Huerta completed an initial mental health evaluation but was recommended for further evaluation for placement in a Dually Diagnosed Residential Facility (DDRF).[2] On April 30, 2024, a counselor attempted to conduct a final mental health evaluation for that purpose, but Huerta refused. A violation report and a second motion to revoke were filed on May 8, 2024, alleging Huerta violated conditions of probation, specifically referring to his refusal to comply with the final mental health evaluation.

At the May 28, 2024 hearing on the Motion to Revoke, Huerta again pleaded "true" to the violation and an open plea was presented to the judge, with a recommendation of the State to alter or amend the conditions of probation, holding Huerta in custody until the recommended mental

---

[1] Before Huerta was originally convicted for the offense of robbery, in May of 2022, an order was entered in this cause recognizing "reasonable cause to believe that [Huerta] has a mental illness" and ordering him to "[f]ollow recommendations of clinician for Mental Health Services."

[2] The mission of the DDRF is to provide treatment for mentally ill probationers who have been ordered by the courts to participate in the program as a result of a motion to revoke, an original condition of placement on community supervision, or as an agreed placement between offender and the courts.

health evaluation was completed by the Center for Health Care Services. Huerta stated he wanted to be sentenced instead. The trial court ordered him confined for eight years with credit for time served.

The trial court certified his right to appeal, and an appeal was timely filed. Here, Huerta asserts the trial court erred by not *sua sponte* inquiring into his competency to enter a plea of "true." Specifically, he alleges that, given the condition he allegedly violated involved the requirement of a mental health evaluation and given his conduct during the hearing, the trial court had reason to believe he was not competent to enter a plea on the motion to revoke.

### MOTION TO REVOKE HEARING

At the motion to revoke hearing in May of 2024, the trial court asked Huerta, who was represented by counsel, how he pleaded to the alleged violation. Huerta pleaded "true." The trial court then offered him an opportunity to discuss the matter with counsel. After a break, the following exchange occurred:

> THE COURT: Let's go back on the record in 2022-CR-6940. All right. Mr. Huerta, it's the Court's understanding you've had time to speak to your attorney—
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: —in regards to your plea of true?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: All right. Do you still wish to plead true to violation of condition number 39 after speaking to Counsel?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: All right. Did you understand by pleading true to violation of condition number 39, the Court could find it true, grant the motion, and sentence you up to eight years in the prison?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Knowing that, do you still wish to plead true to violation of condition number 39?
>
> THE DEFENDANT: Yes, Your Honor.

The State then recommended to the court that the conditions of probation be amended, and Huerta held in custody until the mental health evaluation was completed. Defense counsel explained that Huerta refused to comply with the final mental health evaluation because he preferred outpatient treatment versus inpatient and did not want to remain in custody waiting for the final evaluation. It was explained that the current waiting list to have the final evaluation is long, meaning he could be held for months before it was done. The trial court pointed out that, had he complied with the earlier request, he would not have had to wait for another opening for the evaluation. Huerta responded, "Yes, Your Honor. I do understand that, but it's still a six to seven month's wait. I have almost two years of back time on this case already just sitting in jail." The court then took a break, allowing Huerta to again confer with his counsel.

After the break, Huerta's counsel confirmed on the record that they had talked about whether he would agree to comply with the DDRF evaluation and that he had indicated he would not. Huerta again asserted his desire to do outpatient treatment. Both the trial court and his own counsel reiterated that outpatient treatment was not an option. The following exchange then occurred:

> THE DEFENSE: Mr. Huerta, I explained to you the only options in front of you are DDRF if you agree to it or if we have a sentencing and the Judge will determine how much time you receive. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And since outpatient is not an option, would you like to avail yourself of the opportunity to do DDRF or do you want to be sentenced today?
>
> THE DEFENDANT: I guess I'll be sentenced.
>
> THE DEFENSE: Okay. And I advised you to go with DDRF, correct?
>
> THE DEFENDANT: Yes.

The State then recommended, once again, not to sentence him but to order him to inpatient treatment. And, once again, the Court offered for him to be interviewed for DDRF, to which he answered:

> THE DEFENDANT: Yeah, I guess—
>
> THE COURT: No. It's not I guess. It's either yes or no.
>
> THE DEFENDANT: Well, yes.
>
> THE COURT: You—you can't write your own program. Here are your options. Your options are you can be interviewed for DDRF and if they deem that you're acceptable to the program, that's where you're going to be. Or if you don't want to do that and you tell the Court you don't want to do that, then I will revoke you. Those—those are your two options. Now, if the Court were to revoke you, then the most I could sentence you to is eight years. I'm sure your attorney will ask for something probably less than eight.
> . . . .
> . . . [L]egally, I have to give you credit for any time served that you've been in custody. So those are your options. Do y'all need to discuss this again or no?
>
> THE DEFENSE: Do you want to do the DDRF or do you want to be sentenced?
>
> THE DEFENDANT: I want—
>
> THE DEFENSE: That's not an option. The Judge has told you and I have told you that's not an option. Sentence—we don't know how much time—
>
> THE COURT: All right. So you want to be sentenced?
>
> THE DEFENDANT: Yes, ma'am.

### THE LAW AND STANDARD OF REVIEW

A defendant is presumed to be competent to stand trial, or in this case to enter a plea at a probation revocation hearing, unless proved incompetent by a preponderance of the evidence. TEX. CODE CRIM. PROC. art. 46B.003(b); *see Thompson v. State*, 654 S.W.2d 26, 28 (Tex. App.—Tyler 1983, no pet.) (recognizing a probation revocation hearing is a trial for purposes of competency issues). To be found incompetent, it must be shown that he does not have (1) sufficient ability to consult with his lawyer with a reasonable degree of rational understanding or (2) a rational as well as factual understanding of the proceedings against him. TEX. CODE CRIM. PROC. art. 46B.003(a).

As neither counsel requested the trial court perform an inquiry into Huerta's competency, the question becomes whether there was reason for the court, on its own, to conduct such an inquiry. TEX. CODE CRIM. PROC. art. 46B.004(a) (stating either party or the trial court itself may suggest that the defendant may be incompetent). "If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial." *Id*. art 46B.004(b); *see Babyak v. State*, No. 04-21-00216-CR, 2022 WL 2334549, *1 (Tex. App.—San Antonio June 29, 2022, no pet.). The evidence suggesting incompetence must be sufficient to create a "*bona fide* doubt" in the mind of the trial judge as to the defendant's competence. *Montoya v. State*, 291 S.W.3d 420, 424 (Tex. Crim. App. 2009), *superseded by statute on other grounds as stated in Turner v. State*, 422 S.W.3d 676, 692, n.31 (Tex. Crim. App. 2013). "A *bona fide* doubt may exist if the defendant exhibits truly bizarre behavior or has a recent history of severe mental illness or at least moderate mental retardation." *Id.*

Under article 46B.004(c-1), a suggestion of incompetency "may consist solely of a representation from any credible source" or "may be based on observations made in relation to one or more of the factors described in Article 46B.024 or on any other indication that the defendant is incompetent within the meaning of Article 46B.003." TEX. CODE CRIM. PROC. art. 46B.004(c-1). "The factors set out in article 46B.024 include the capacity of the defendant during criminal proceedings to (1) rationally understand the charges against him and the potential consequences of the criminal proceedings, (2) disclose to his defense counsel pertinent facts, events, and states of mind, (3) engage in a reasoned choice of legal strategies and options, (4) understand the adversarial nature of the criminal proceedings, (5) exhibit appropriate courtroom behavior, and (6) testify." *Babyak*, 2022 WL 2334549, at *1 (citing TEX. CODE CRIM. PROC. art. 46B.024(1)). Other considerations that may lead to a finding that the defendant is not competent include a mental

illness or an intellectual disability, "whether the identified condition has lasted or is expected to last continuously for at least one year," whether "medication is necessary to maintain the defendant's competency," and "the degree of impairment resulting from the mental illness or intellectual disability, if existent, and the specific impact on the defendants capacity to engage with counsel in a reasonable and rational manner." TEX. CODE CRIM. PROC. art. 46B.024(2)–(5).

A trial court's decision to hold or not hold a *sua sponte* inquiry into a defendant's competency is reviewed under an abuse of discretion standard of review. *Babyak*, 2022 WL 2334549, at *2 (citing *Montoya*, 291 S.W.3d at 426). We, therefore, review the information before the trial court to determine if she acted in an arbitrary or unreasonable manner or contrary to guiding principles. *Id.* But, we do so giving deference to the fact that the trial court, not us, had the opportunity to observe the behavior of the defendant first-hand and is, therefore, "in a better position to determine whether [the defendant] was presently competent." *Id.* (quoting *Montoya*, 291 S.W.3d at 426).

### ANALYSIS

From the record before us, it appears Huerta not only had the opportunity to confer with his counsel before and during the hearing, but that he understood and voluntarily chose to go against the advice of counsel. He never vacillated between two positions. He maintained his refusal to engage in inpatient treatment and exhibited appropriate courtroom behavior, paying respect to the trial court and to his own counsel. Rather than evidencing a misunderstanding of the proceedings or the choices before him, Huerta was clear in his desire to avoid inpatient treatment as well as the long wait time for further evaluation. He may very well have been contemplating the time he would serve on his eight-year sentence, given credit for time served (as he stated, "almost two years"), compared to what he might have to endure with an inpatient treatment program.

Notably, while there is mention of a potential mental illness in a court record from 2022, there is no information presented to the court as to any diagnosis. And, Huerta did not demonstrate bizarre or confused behavior. A mental illness, by itself, does not equal incompetence, but is just one factor to consider under Texas Code of Criminal Procedure article 46B.024. *See Montoya*, 291 S.W.3d at 425 (citing *Moore v. State*, 999 S.W.2d 385, 395 (Tex. Crim. App. 1999)). "The considerations when evaluating competency to stand trial include the defendant's level of understanding of the proceeding and ability to consult with counsel in preparation for the proceeding." *Id.* at 425–26.

Here, Huerta evidenced an understanding of the proceedings, was able to testify under oath and meaningfully confer with his counsel. Further, since his mental health was first referenced in an early court order, Huerta has pleaded guilty to the offense of robbery, pleaded "true" to a prior probation violation, and was sworn in by his own counsel to provide testimony relating to the violation at issue here. Neither counsel for Huerta nor the State ever indicated that they were uncomfortable with his ability to rationally understand the choices provided to him at this hearing or at the time of his prior pleas. Where the record does not show "recent severe mental illness, moderate retardation, or truly bizarre acts, and there was no suggestion by Appellant's attorney, the State, or the trial court, all of whom observed Appellant's behavior at the hearing, that Appellant appeared unable to understand the proceedings," we will appropriately defer to the trial court's judgment. *Montoya*, 291 S.W.3d at 426.

On these facts, we cannot conclude that the trial court abused its discretion in failing to *sua sponte* hold an informal competency hearing. *See Sanchez v. State*, No. 04-20-00379-CR, 2021 WL 1199052, at *2 (Tex. App.—San Antonio Mar. 31, 2021, no pet.) (mem. op.). We, therefore, affirm.

Lori Massey Brissette, Justice